UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMARO KECOYE SEYDI,

    Plaintiff,

vs.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.,*

    Defendants.
_____/

Case No. 10-10925
Hon. Gerald E. Rosen

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 28, 2011

PRESENT: Honorable Gerald E. Rosen
                 Chief Judge, United States District Court

## I. INTRODUCTION

On March 9, 2010, Plaintiff Amaro Kecoye Seydi filed a complaint for a writ of mandamus, seeking to compel the Defendant federal agency, the United States Citizenship and Immigration Services ("USCIS"), and the Defendant federal officials to act upon Plaintiff's application to adjust his status. As grounds for the Court's exercise of subject matter jurisdiction, Plaintiff cites a federal statute conferring jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, and he

further appeals to his entitlement to due process of law under the Fifth Amendment to the U.S. Constitution, as well as a right of judicial review of federal agency action, *see* 5 U.S.C. § 702.

In lieu of answering the complaint, Defendants have filed a motion to dismiss for lack of subject matter jurisdiction or, alternatively, for summary judgment in their favor. In challenging the Court's subject matter jurisdiction, Defendants cite a jurisdiction-stripping provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(ii), that largely forecloses judicial review of matters committed to the "discretion of the Attorney General or the Secretary of Homeland Security," and they argue that the pace of adjudication of Plaintiff's application to adjust status is just such a matter. Alternatively, Defendants argue that the delay in the adjudication of this application is reasonable as a matter of law. Plaintiff has filed a response in opposition to Defendants' motion as well as a cross-motion for summary judgment, arguing that the delay in the resolution of his application to adjust status has been ***unreasonable*** as a matter of law.

Both Defendants' and Plaintiff's motions have been fully briefed by the parties. Having reviewed these cross-motions, their accompanying briefs and exhibits, and the record as whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the parties' motions "on the briefs." *See* Local Rule 7.1(f)(2), United States District Court, Eastern District of

Michigan. For the reasons set forth below, the Court finds that it lacks jurisdiction over this case, and that Defendants' motion to dismiss must be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following recitation of facts derives largely from the allegations of Plaintiff's complaint and from information gleaned from the exhibits accompanying his complaint, as supplemented by procedural and legal developments outlined in the exhibits accompanying Defendants' motion. Plaintiff Amaro Kecoye Seydi is a 58-year-old male who is a native and citizen of Senegal, and who currently resides in Detroit, Michigan. In the late 1990s, he arrived in the United States on a tourist visa. Shortly thereafter, Plaintiff applied for asylum, and this application was granted by an immigration judge on March 31, 2004.

In November of 2005, Plaintiff filed a Form I-485 application to adjust his status to that of a lawful permanent resident. As of the date this suit was filed in March of 2010, this application remains pending. During this period of delay, Plaintiff has made several inquiries of the Defendant USCIS regarding the status of his application. In each instance, he was advised that his application was still under review, and he occasionally was informed more specifically that his application was on hold because he appeared to be inadmissible under § 212(a)(3)(B) of the INA, 8 U.S.C. § 1182(a)(3)(B), and because the USCIS was awaiting a decision by the Department of Homeland Security ("DHS") whether to permit a discretionary exemption from this threshold determination of inadmissibility.

As suggested in these responses to Plaintiff's inquiries, the disposition of Plaintiff's I-485 application has been impacted by recent developments in the law. Under 8 U.S.C. § 1159(b)(5), the USCIS must determine an applicant's admissibility in adjudicating an application for adjustment of status. Under 8 U.S.C. § 1182(a)(3)(B), in turn, an applicant is inadmissible if he has engaged in terrorist activity within the meaning of this statute. According to the declaration of USCIS Assistant Director Evelyn Martin, the information included in Plaintiff's application for asylum indicates that he is inadmissible under § 1182(a)(3)(B) because, from 1980 until he came to the United States in 1999, he provided material support to the Mouvement des Forces Democratiques de le Casamance ("MFDC"), an organization that meets the definition of a "Tier III" terrorist organization under § 1182(a)(3)(B)(vi)(III).[1] (*See* Defendants' Motion, Ex. 1, Martin Decl. at ¶ 11.) Consequently, if the USCIS were to make a final decision on Plaintiff's application for adjustment of status, it appears all but certain that the application would be denied. (*See id.* at ¶ 23.)

However, in the Consolidated Appropriations Act of 2008 ("CAA"), Pub. L. No.

---

[1] This "Tier III" designation encompasses any "group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv)" of the statute. 8 U.S.C. § 1182(a)(3)(B)(vi)(III). These latter subclauses, in turn, enumerate the types of conduct that constitute "engag[ing] in terrorist activity." Plainly, the language of § 1182(a)(3)(B)(vi)(III), on its face, does not distinguish between violent and non-violent subgroups of an organization that engages in terrorist activities. To the extent, then, that Plaintiff or another applicant might claim membership in a non-violent wing of an organization that "engage[s] in terrorist activity" within the meaning of § 1182(a)(3)(B)(iv)(I)-(VI), this would still render the applicant inadmissible under the statute.

110-161, 121 Stat. 1844, which was signed into law on December 26, 2007, the Secretary of the DHS was given additional discretionary authority to grant exemptions from the terrorist-related inadmissibility grounds relating to "Tier III" terrorist organizations. (*See id.* at ¶ 26.) In light of this enactment, the Deputy Director of USCIS issued a policy memorandum on March 26, 2008, explaining that the Secretary of the DHS has not yet exercised the authority conferred under the CAA, and directing adjudicators to withhold their decisions in cases where the applicants might benefit from the expanded discretionary authority granted to the Secretary under this enactment. (*See id.* at ¶ 15; *see also* Defendants' Motion, Ex. 2, 3/26/2008 Memorandum.)

The adjudication of Plaintiff's application has been held in abeyance pursuant to the statement of USCIS policy set forth in this memorandum, and Assistant Director Martin states in her declaration that the USCIS is "actively . . consider[ing]" how to proceed with cases, such as Plaintiff's, that remain on hold in accordance with agency policy. (*See* Martin Decl. at ¶¶ 21-22.)[2] Through the present action, Plaintiff challenges this continued delay, seeking a writ of mandamus that would compel the Defendant agency and immigration officials to act upon his application for an adjustment of status.

### III. ANALYSIS

Although Plaintiff seeks to compel Defendants to adjudicate his pending

---

[2]Following the March 2008 policy memorandum, the USCIS has issued two more recent statements addressing the procedures for adjudicating certain categories of cases in which applicants might be eligible for an exemption from the terrorist-related inadmissibility grounds. (*See* Martin Decl. at ¶¶ 18-20.) Plaintiff's case, however, does not lie within the categories addressed in these more recent memoranda. (*See id.*)

5

application to adjust his status, he must establish as a threshold matter that the Court has subject matter jurisdiction over this suit. In their pending motion, Defendants argue that this jurisdiction is lacking. The Court agrees.

As Defendants observe in their motion, Congress has acted a number of times over the years to narrow the scope of judicial review of immigration-related decisions. As pertinent here, section 242 of the Immigration and Nationality Act ("INA") now includes a provision divesting the federal courts of jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Under this provision, then, the Court cannot exercise jurisdiction over the present action if the handling of Plaintiff's application is properly viewed as a "decision or action" by the Secretary of Homeland Security[3] on a matter committed to her discretion under the subchapter of the INA of which § 1252 is a part.[4]

In a recent decision issued shortly after Plaintiff commenced this action, Judge Walton of the District Court for the District of Columbia held under substantially similar facts that the federal district courts lack subject matter jurisdiction to review decisions by

---

[3]All are agreed that the Secretary of Homeland Security, and not the Attorney General, is the proper focus of the Court's inquiry, in light of the discretion conferred upon the Secretary under the CAA.

[4]Defendants state in their motion that § 1252 lies within Chapter 12, Subchapter II of Title 8 of the United States Code, and that this subchapter spans from 8 U.S.C. § 1151 to 8 U.S.C. § 1381.

the USCIS to hold applications for adjustment of status in abeyance pursuant to the agency's March 26, 2008 policy memorandum. *See Singh v. Napolitano,* 710 F. Supp.2d 123 (D.D.C. 2010). In that case, as here, plaintiff Amrit Pal Singh had successfully applied for asylum, but this application revealed that he had been a member of and provided material support to groups that were considered to be Tier II and Tier III terrorist organizations. In light of this discovery, the USCIS declined to adjudicate Singh's application for an adjustment of status, with the result that this application had remained pending for almost nine years by the time Singh brought suit in federal district court. The defendant government officials argued that the court was precluded under § 1252(a)(2)(B)(ii) from exercising jurisdiction over Singh's suit, and the court agreed. *See Singh,* 710 F. Supp.2d at 129-32.

In so ruling, the court addressed (and rejected) each of the contentions advanced by Plaintiff here as to why § 1252(a)(2)(B)(ii) should not foreclose judicial review of a USCIS decision to hold an application for adjustment of status in abeyance. First, while Plaintiff recognizes that the Secretary of the DHS has the discretion under 8 U.S.C. § 1159(b) to grant (or deny) applications for adjustment of status, he argues that nothing in this provision (or elsewhere in the INA) grants the Secretary the discretion "not to decide applications at all," or to hold them in abeyance indefinitely. (Plaintiff's Response Br. at 7.) The court in *Singh,* however, found that the decision to hold an application in abeyance was encompassed within the Secretary's discretionary power "to promulgate regulations that she feels are necessary to exercise her authority to grant permanent

resident status to an asylee. *Singh,* 710 F. Supp.2d at 129 (citing the Secretary's discretionary authority under § 1159(b) to decide applications for adjustment of status "under such regulations as the Secretary or the Attorney General may prescribe"). In light of this discretionary authority to issue "regulations governing *how (and when)* adjustment decisions are made," the court held that the Secretary had acted pursuant to a statutory grant of discretion when she — through her delegate, the deputy director of the USCIS — issued the March 26, 2008 policy memorandum relied upon by the USCIS to hold plaintiff Singh's (and Plaintiff's) application in abeyance. *Singh,* 710 F. Supp.2d at 129-30 (internal quotation marks and citation omitted).

Next, Plaintiff urges the Court to distinguish between the Secretary's "action" on an application to adjust status, which is unreviewable under § 1252(a)(2)(B)(ii), and the Secretary's purported ***inaction*** with respect to his pending application. While the court in *Singh* viewed this as a "close[] question," it found that the Secretary's decision to hold plaintiff Singh's application in abeyance qualified as an "action" within the meaning of § 1252(a)(2)(B)(ii):

> At first blush, the plaintiff's argument that the Secretary's decision to hold his application in abeyance is "inaction" certainly has some appeal, as the plaintiff's application is currently in a state of limbo and has been in this status for several years. Furthermore, there is a real possibility that without judicial (or other) intervention, the plaintiff's application could remain pending indefinitely. On the other hand . . . . one could argue here that the Secretary's decision to hold the plaintiff's application in abeyance is a result of a series of affirmative acts: the Secretary's decision to promulgate regulations setting forth the procedures for removing an adjustment of status application from the general pool to a special pool for consideration by the Secretary, the Secretary's removal (via the District Director) of the

> plaintiff's application from the general pool to the select pool, and the act of conducting an investigation into whether a waiver of admissibility would be appropriate in the plaintiff's case. Thus, it is difficult to peg this case squarely within either the "action" or "inaction" categories, which is hardly surprising given that the difficulty in distinguishing between what constitutes "action" and "inaction" has been long acknowledged by courts and academic commentators alike.
>
> Although the difficulty in defining the term "action" under Section 1252(a)(2)(B)(ii) would seem to imply that judicial review of the plaintiff's claim is required, a closer examination reveals that as a practical matter, the Court has no choice but to conclude that the Secretary's decision to hold the plaintiff's application in abeyance constitutes "action," rather than "inaction." This is because a review of the Secretary's decision to hold the plaintiff's application in abeyance necessarily entails an indirect review of the Secretary's discretionary authority. For example, the Court would have to assess whether the Secretary's delay in processing the plaintiff's application is unreasonable. And, the Court's assessment of reasonableness would surely require a review of what Congress designed to be a careful, time-consuming process given the research needed by law enforcement and intelligence agencies and the various levels of scrutiny needed within the three Cabinet departments and between the three Cabinet heads to determine whether the nature of the agency's investigation justifies the delay in processing the plaintiff's application. But these decisions as to whether and how to conduct an investigation into the plaintiff's background . . . are undoubtedly within the discretionary authority of the Secretary that cannot be reviewed by this Court; thus a review of the Secretary's decision to hold the plaintiff's application in abeyance is not merely a review of "inaction," but rather a review of a series of discretionary acts that is plainly barred by Section 1252(a)(2)(B)(ii).

*Singh,* 710 F. Supp.2d at 131-32 (internal quotation marks and citations omitted).

The Court finds this reasoning persuasive, and elects to follow the ruling in *Singh.* Beyond the points ably made by the D.C. district court, this Court believes it important to highlight the additional discretionary acts that would be subject to judicial review in order to determine whether the USCIS's handling of Plaintiff's application has been reasonable.

In particular, not only would the Court be obligated to review the actions taken by the USCIS to date in processing Plaintiff's application and electing to hold it in abeyance — actions which have included a number of background, security, and fingerprint checks, (*see* Defendants' Motion, Ex. 1, Martin Decl. at ¶¶ 6-9), as well as decisions whether Plaintiff fits within certain categories of applicants that, to date, the Secretary of the DHS has elected to exempt from the terrorism-related inadmissibility provisions, (*see id.* at ¶¶ 12-13, 16, 19-20) — but the Court necessarily would have to inquire into the Secretary's ongoing efforts to develop additional guidelines and procedures governing the exercise of her discretionary authority to grant exemptions from the terrorism-related inadmissibility grounds relating to Tier III terrorist organizations, (*see id.* at ¶¶ 15-18, 22-24 (describing these efforts)). The Secretary is entitled to exercise this statutory authority to formulate and issue appropriate regulations in an orderly and thoughtful manner, and this Court plainly lacks the knowledge or expertise to steer this exercise of discretion or dictate the speed with which it is exercised. More to the point, because the Secretary *has* engaged in these various exercises of her discretionary authority, rather than simply permitting Plaintiff's application to languish without consideration or action, § 1252(a)(2)(B)(ii) takes these actions outside the purview of this Court.

The case upon which Plaintiff principally relies, *Liu v. Novak,* 509 F. Supp.2d 1 (D.D.C. 2007), is not to the contrary, but rather is distinguishable on two grounds. First, the cause of the delay in that case was a failure to perform a required FBI background check, and the court noted more generally that "the government has not even specified

what steps it has taken in processing plaintiff's particular application." *Liu,* 509 F. Supp.2d at 3, 6. Here, in contrast, Defendants have completed the various background checks needed to render a decision on Plaintiff's application. Thus, while the court in *Liu* readily concluded that the plaintiff in that case was "challenging the absence of a decision or action," 509 F. Supp.2d at 6, this Court (like the court in *Singh)* finds that the facts and circumstances here place this case squarely on the "action" side of the action/inaction divide.

Next, and more importantly, the reason for the delay here, in contrast to *Liu,* is so that the Secretary of the DHS may deliberate upon and resolve a matter that unquestionably lies within her discretionary authority — namely, the formulation of regulations to guide her discretionary decision whether to grant Plaintiff an exemption from the terrorism-related grounds for his inadmissibility. The delay in *Liu,* in contrast, was attributable to the length of time needed to conduct a mandatory background check, and not any deliberative efforts by the Secretary to determine whether the plaintiff's application was worthy of or eligible for an exercise of discretionary authority. Accordingly, the Court declines to follow the reasoning in *Liu,* but instead is persuaded by the decision in *Singh* under far more similar facts.

The Court recognizes that Plaintiff is understandably frustrated with the lack of a final decision on his application to adjust status, with over five years having passed since he filed this application. Yet, it is important to bear in mind that if this Court were to compel the Defendant USCIS to immediately adjudicate Plaintiff's application, there is

every reason to believe that the application "would be denied without prejudice to re-filing." (Defendants' Motion, Ex. 1, Martin Decl. at ¶ 23.) As a practical matter, then, Plaintiff's best hope for favorable action on his application is that the Defendant Secretary will exercise her undeniably discretionary authority to grant Plaintiff an exemption from the terrorism-related grounds for inadmissibility that would otherwise dictate the denial of his application. It strikes the Court as incongruous to, on the one hand, insist that Defendants act promptly to adjudicate an application that can only succeed through the exercise of the Secretary's discretionary authority, while at the same time advancing a theory of subject matter jurisdiction that disavows the notion that the Secretary has been called upon to exercise her discretionary authority. In the end, while the Court certainly urges Defendants to adjudicate Plaintiff's application with all possible dispatch, it is unable to traverse the narrow and winding path conjured by Plaintiff for avoiding the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)(ii).

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' August 23, 2010 motion to dismiss or for summary judgment (docket #15) is GRANTED IN PART, as to Defendants' challenge to the Court's subject matter jurisdiction, and is otherwise

DENIED AS MOOT. In light of this ruling, IT IS FURTHER ORDERED that

Plaintiff's November 18, 2010 motion for summary judgment (docket #21) is DENIED

AS MOOT.


                                         s/Gerald E. Rosen
                                         Chief Judge, United States District Court

Dated: March 28, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2011, by electronic and/or ordinary mail.

                                         s/Ruth A. Gunther
                                         Case Manager